1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

STACEY VANDELL, *et al.*,

CASE NO. C18-0785-JCC

Plaintiffs,

ORDER

v.

LAKE WASHINGTON SCHOOL DISTRICT,

Defendant.

This matter comes before the Court on Plaintiffs' appeal of the Administrate Law Judge's ("ALJ") finding that Plaintiffs' claims are barred by the statute of limitations (Dkt. No. 23). Having thoroughly considered the parties' briefing and the relevant record, the Court AFFIRMS the ALJ's order in part and REVERSES and REMANDS the order in part.

## I.     BACKGROUND

Plaintiffs ("the Vandells") are the parents of two students ("the Students") who received an education through Defendant ("the District") at Margaret Mead Elementary School, for the 2012–13 (kindergarten) and 2013–14 (first grade) school years. (Dkt. No. 3.) The Students were eligible to receive a special education pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–50. (*See id.*) Pursuant to the IDEA, the District formulated individualized education programs ("IEPs") for the Students, which are designed to assess a

student's abilities and provide academic plans and goals for the student. *See* 20 U.S.C. § 1414(d). IEPs are designed to provide an eligible student with a free appropriate public education ("FAPE"). 20 U.S.C. § 1401(9).

During the 2012–13 school year, the Vandells came to believe that the Students were not progressing academically; they were isolated from the class, coloring in the back of the classroom. AR 590. In the spring of 2013, the Vandells asked the District to reevaluate the Students' IEPs, but the District refused to do so, causing the Vandells to believe that the District was "out of compliance." AR 589–90. In May or June 2013, the District's principal told the Vandells that the Students should repeat kindergarten because the District did not have the first-grade resources that were necessary to assist the Students. AR 589.

In the summer of 2013, the Vandells were sufficiently worried about the Students and their academic progress that they hired someone to evaluate them. AR 589. Through the evaluation, the Vandells learned that one of the Students had dyslexia and both Students had various other learning disorders. AR 593. The Vandells subsequently requested a meeting with the District so that they could reevaluate the Students' plans. AR 589–90. At that meeting, which occurred at the beginning of the 2013–14 school year, the Vandells asked the District if it could help dyslexic students, and the District told the Vandells that it "did not recognize that learning challenge." AR 590. The Vandells asked whether a specialized private school would better suit the Students' needs. AR 590.

During the 2013–14 school year, Ms. Vandell testified that she saw some progress, but ultimately her concern with the Students' academic progress grew. AR 75. The Vandells acknowledged that the District was limited in the types of curriculums it could offer and, even if the Students needed a specialized curriculum, it might not be available through the District. AR 604. Ms. Vandell testified that one of the District's teachers told the Vandells that they should consider placing the Students in a private school. AR 78. Although the Vandells often acknowledged the District's hard work for the Students, *see, e.g.*, AR 601, 604, 622, the

Vandells became increasingly aware that the District did not have the tools or resources to provide the Students with FAPEs.

In the summer of 2014, the Vandells contacted a private school to inquire about the Students' placement there, AR 611, and by August 2014, the Vandells planned for the Students to attend private school. AR 613–14. Ms. Vandell told the private school that the Vandells were excited that the Students would finally be in an "appropriate environment." AR 614. On August 28, 2014, the Vandells met with the District and had already retained their current counsel. AR 616–17. At the meeting, the Vandells requested that the District place the Students at the private school. AR 616, 620, 623. The next day, Mr. Vandell acknowledged that a lot of time had already been lost at the District and, because of that, it was critical that the Students were fully submerged into a comprehensive curriculum and environment at the private school. AR 623. He also said that the District's personnel had "candidly admitted to [the Vandells] in the past that [the District] does not have the resources for such specialization." AR 623.

In early September 2014, the Students left Margaret Mead and began attending the private school, where the Vandells observed the Students' positive progress. AR 246, 623, 628. In the meantime, the District again reevaluated the Students and formulated new IEPs for them. AR 141–42. At some point during this time, the Vandells allege that the District promised to place the Students at the private school. (Dkt. No. 23 at 10.) The Vandells kept in close contact with the Students' private school teacher, who provided feedback about the Students and about the District's plans for the future. *See, e.g.*, AR 653, 664, 668, 682, 688. On December 3, 2014, the Vandells said that the Students had "shown undeniable progress at [the private school]." AR 627. On December 5, 2014, the Vandells and the District attended an IEP meeting for the Students. AR 141–42. During that meeting, Ms. Vandell stated that the District had failed, that the data from the private school showed that the Students were progressing faster there than at the District, and that the District was not the right environment for the Students. AR 144.

Ultimately, the Vandells allege that in January 2015 the District finalized new IEPs for

the Students. AR 309–10. According to the Vandells, these IEPs were essentially the same as the failed IEPs from previous years. (Dkt. No. 23 at 6–7.) The District did not place the Students at the private school and did not offer to pay private school tuition, and instead recommended that they continue their educations with the District. (*Id.* at 10–11.)

On December 6, 2016 (more than two years after the December 5, 2014 meeting), the Vandells began administrative proceedings by filing a due process complaint alleging that the District failed to provide the Students with a FAPE while they were enrolled at Margaret Mead. AR 352. The complaint specifically protests the District's actions for the "2011/2012/2013/2014 school years," which are the years that the Students attended Margaret Mead. AR 354. However, the complaint also references harm suffered because of the District's failure to place the Students at the private school for the 2014–15 school year. AR 354–55.

In the administrative proceedings, the ALJ found that the Vandells' claims were time-barred because they filed their complaint on December 6, 2016, more than two years after they knew or should have known about the alleged action forming the basis of the complaint. AR 233–34. The Vandells now appeal that ruling.

## II.    DISCUSSION

### A.    Standard of Review

When a party challenges an administrative decision under the IDEA, the Court "shall receive the records of the administrative proceedings;" "shall hear additional evidence at the request of a party;" and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). In IDEA administrative appeals, the Court does not employ the typical highly deferential standard of review of agency decisions. *See JG v. Douglas Cty. Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008). Instead, the Court gives "due weight" to the administrative proceedings, particularly where—as here—the administrative decision was thorough, careful, impartial, and sensitive to the complexities present. *See id.*; *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472, 1476

(9th Cir. 1993). The Court must consider the findings carefully and address the hearing officer's resolution of each material issue. *Cty. of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466 (9th Cir. 1996). After such consideration, the Court may accept or reject the hearing officer's findings in part or as a whole. *Id.* Additionally, "a finder of fact's determination of credibility receives deference on appeal, because access to live testimony is important to the credibility finding." *Ms. S. ex rel. G. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1127 (9th Cir. 2003).

### B. IDEA

#### 1. Statute of Limitations

Under the IDEA, a due process complaint must be filed within two years of the date the parent knew or should have known about the alleged action forming the basis of the complaint. 20 U.S.C. § 1415(f)(3)(C). Washington applies this two-year statute of limitations. Wash. Admin. Code § 392-172A-05080(2). Therefore, to measure the statute of limitations, only two dates are relevant: (1) the date the complaint was filed, and (2) the date that the Vandells knew or should have known about the actions forming the basis of their complaint.

##### a. Complaint filing date

The ALJ found that the Vandells' due process complaint was filed on December 6, 2016. AR 247. However, the Vandells contend that the complaint was actually filed at least a day earlier.[1] They support this assertion with a declaration of the Vandells' counsel saying that she filed the complaint on an earlier date. (Dkt. No. 23 at 20.) However, there are three independently-stamped copies of the complaint that all show that it was received by different offices on December 6, 2016. AR 352, 357, 630. Therefore, even if the Court accepts counsel's declaration as additional evidence, a preponderance of the evidence shows that the Vandells' due

---

[1] There is some confusion about the date that the Vandells allege they filed their complaint. (*See* Dkt. No. 23 at 10, 20.) Nevertheless, they argue that the complaint was filed at least a day before the date stamped on the complaint by various entities.

process complaint was filed on December 6, 2016.

             *b.  "Knew or should have known" date*

                   i.  2012–13 and 2013–14 school years

      The Vandells argue that they did not know that the District had failed to provide the Students with FAPEs until January 2015, the date that the Vandells received draft IEPs. (Dkt. No. 23 at 4–11.) The Vandells contend that they realized that the District had failed to provide FAPEs because the January 2015 IEPs included the same goals as previously-failed IEPs and, in the meantime, the Students were progressing in private school. (*Id.*) However, to the extent that the complaint is about the 2012–13 and 2013–14 school years, AR 352–56, this argument is illogical. The IEPs that Defendant developed in January 2015 did not inform the Vandells about the quality of the education that the Students received *in the past*, but were instead a plan of how to provide the Students with FAPEs *moving forward*. *See* 20 U.S.C. § 1414(d); *Adams v. Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999) ("[An IEP] is a snapshot, not a retrospective."). The information that the Vandells would have had to rely on to determine whether the Students were receiving FAPEs for the 2012–13 and 2013–14 school years would be information about *those* school years, and each Student's educational success or lack thereof resulting from those years' IEPs. The January 2015 IEPs are only relevant to claims made about the 2014–15 school year. *See infra* Section II.B.1.b.ii.

      The ALJ correctly highlighted evidence that the Vandells knew or should have known, before December 6, 2014, that the District failed to provide the Students with FAPEs. AR 237–53. As the ALJ found, a lack of progress by a student, on its own, is insufficient to trigger the parent's knowledge. *See* 20 U.S.C. § 1415(f)(3)(C). Instead, the "knew or should have known" date is triggered when there is a lack of progress *that the parents attribute to the school district's failures*. *See id.*

      With regard to the 2012–13 school year, in August 2013, the Vandells came to believe that the District was "out of compliance" when it refused to reevaluate the Students because they

were not progressing in class. AR 590. This indicates that the Vandells "knew or should have known" that the District failed to provide the Students with FAPEs for the 2012–13 school year no later than August 2013.

The Vandells made many comments with regard to the 2013–14 school year which indicate that they knew that the District had failed to provide the Students with FAPEs for that school year prior to December 6, 2014. In a meeting at the beginning of the 2013–14 school year, the District said that it didn't recognize dyslexia as a learning disability. AR 590. At that point, the Vandells considered moving the Students to private school so that they could be educated by people who would "say the word dyslexia and say that they would recognize it." AR 49. In April 2014, Ms. Vandell acknowledged that the District had a limited curriculum that may not be able to enhance the Students' educations. AR 604. In August 2014, the Vandells decided to remove the Students from the District and enroll them into private school. AR 614. In making that decision, Ms. Vandell told the private school that the Vandells were "so incredibly happy and excited that [the Students] will finally be in an appropriate environment." AR 614. On August 28, 2014, the Vandells met with the District and had already retained their current counsel. AR 616–20. The following day, when explaining the Vandells' decision to transfer the Students to private school, Mr. Vandell said that the District's "personnel have candidly admitted to [the Vandells] in the past that [the District] does not have the resources for such specialization." AR 622–23. All of these facts indicate that by late August 2014, the Vandells knew or should have known that the Students were not receiving FAPEs for the 2013–14 school year, and that the District could be faulted for that failure.

As the 2014–15 school year progressed with the Students in private school, the Vandells reported that the Students advanced tremendously. (*See* Dkt. No. 23 at 7.) The Vandells argue that it was not until a few months into the school year that they knew that the District was at fault for the Students' failures because the Vandells had to monitor the Students' progress at the private school and ensure that they were not still suffering setbacks. (*Id.* at 9.) But the

overwhelming evidence of near-immediate academic success indicates that the Vandells should have known close to the beginning of the Students' placement in private school that the Students' academic failure was caused by the District. *See, e.g.*, AR 688.

Finally, on December 5, 2014, the Vandells attended an IEP meeting accompanied by their attorney. AR 142. During that meeting, Ms. Vandell said that the District had failed, that data from the private school showed that the Students were progressing faster there, and that the District was not the right environment for the Students. AR 144. By this meeting, which was more than two years before the Vandells filed their due process complaint, the Vandells certainly knew that the Students had been denied FAPEs for the 2013–14 school year, and that the District was to blame.

The evidence in the record clearly indicates that the Vandells knew or should have known prior to December 6, 2014 that the District failed to provide the Students with FAPEs for the 2013–14 school year. Because the complaint was filed on December 6, 2016, the Court finds that the Vandells' claims that the District failed to provide the Students with FAPEs for the 2012–13 and 2013–14 school years are time-barred.

ii.     2014–15 school year

Although the record is not clear with regard to this matter, the Vandells allege that they were not made aware that the District would not be placing the Students at the private school or paying for it until January 2015. AR 932–33. Depending on when the Vandells were aware that the District was refusing to place the Students in private school (and refusing to pay for such placement), complaints about that conduct may not be time-barred. It appears that the ALJ assumed that the complaint was only regarding the 2012–13 and 2013–14 school years. *See* AR 230–34. As discussed above, those claims are time-barred. *See supra* Section II.B.1.b.i. However, although the complaint is largely about the 2012–13 and 2013–14 school years, some language in the complaint appears to be protesting the District's actions in the 2014–15 school year. *See* AR 354. Therefore, to the extent the complaint alleges District failures in the 2014–15

school year, those claims may not be time-barred.

2. <u>2012–13 and 2013–14 School Years: Exceptions to the Statute of Limitations</u>

The IDEA's two-year statute of limitations is tolled if: (a) there were "[s]pecific misrepresentations by the school district that it had resolved the problem forming the basis of the due process hearing request; or (b) [t]he school district withheld information from the parent that was required under this chapter to be provided to the parent." Wash. Admin. Code § 392-172A-05080. The Vandells argue that both exceptions apply and the statute of limitations should be tolled. (Dkt. No. 23 at 11–13.)

a. *Specific misrepresentations*

In arguing that this exception to the statute of limitations applies, the Vandells vaguely discuss the Students' progress at the private school and the January 2015 IEPs, but do not allege any specific misrepresentations made by the District. (*Id.* at 12–13.). Elsewhere in their briefing, the Vandells allege that the District made representations that it would place the Students in private school in the future. (*Id.* at 10.) But this is not a misrepresentation that the District had solved the problem of the deficiencies identified in the Vandells' complaint; it is a representation about what the District intended to do in the future. Further, after the Court's own review of the administrative record, the Court cannot find any specific misrepresentations made by the District that it had resolved any problems with the Students' FAPEs. Therefore, the Court finds that the first exception to the statute of limitations is inapplicable.

b. *Withheld information*

The Vandells do not allege any specific information that the District withheld. (Dkt. No. 23 at 12.) The Vandells vaguely argue that the District withheld that it would not be recommending private school placement for the Students, when it had previously represented that it would. (*Id.*) However, even if this was information that the District was required to provide under the IDEA, the District's decision not to place the Students in private school for the 2014–15 school year is irrelevant to the 2012–13 and 2013–14 school years. AR 352–56.

Further, after the Court's own review of the administrative record, the Court cannot find any information that was withheld by the District that it was required to provide. Therefore, the second exception to the statute of limitations is inapplicable.

### 3. 2012–13 and 2013–14 School Years: Equitable Tolling and Equitable Estoppel

The Vandells argue that even if their claims are time barred and even if both of the exceptions to the statute of limitations are inapplicable, the Court should apply equitable tolling or equitable estoppel to allow the Vandells' claims to survive. (Dkt. No. 23 at 13–15.) However, a "court[] of equity should not act . . . when the moving party has an adequate remedy at law." *Brown v. Holder*, 763 F.3d 1141, 1152 (9th Cir. 2014) (alteration in original) (citing *Morales v. Trans World Airlines*, 504 U.S. 374, 381 (1992)). The two exceptions to the IDEA's statute of limitations are exclusive, and bar any common law or equitable tolling of the limitations period. *See, e.g.*, *Moyer ex rel. Moyer v. Long Beach Unified Sch. Dist.*, 2013 WL 271686, slip op. at 7 n.71 (C.D. Cal. 2013); *Lakeview Neurorehab Ctr. Midwest, Inc. v. Palin*, 2010 WL 11619416, slip op. at 7 (D. Alaska 2010). Because there is an adequate remedy at law, the Court cannot act in equity to apply equitable tolling or equitable estoppel to the statute of limitations barring the Vandells' claims.

## III. CONCLUSION

For the foregoing reasons, the ALJ's order is AFFIRMED as to Plaintiffs' claims about the 2012–13 and 2013–14 school years. The ALJ's order is REVERSED as to Plaintiffs' claims about the 2014–15 school year and REMANDED to determine whether those claims are time-barred and whether they have merit.

//

//

//

//

//

DATED this 12th day of March 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE